No. 40,441

WILLIAM L. POOL, et al., *Appellees,* v. H. C. HOLT, et al., *Appellants.*

(303 P. 2d 186)

Opinion filed November 3, 1956.

*Payne H. Ratner,* of Wichita, argued the cause, and *Louise Mattox, Payne H. Ratner, Jr., Russell Cranmer, Dale B. Stinson, Jr., Cliff W. Ratner, William L. Fry, A. Wayne Murphy, Ray A. Overpeck, Bernard V. Borst,* and *D. Clifford Allison,* all of Wichita, were with him on the briefs for the appellants.

*Douglas Hudson,* of Fort Scott, argued the cause, and *Howard Hudson,* and *Douglas G. Hudson,* both of Fort Scott, were with him on the briefs for the appellees.

The opinion of the court was delivered by

ROBB, J.: This appeal is taken from an order of the trial court overruling the demurrers of defendants to plaintiffs' petition seeking to enjoin the sale and issuance of bonds by a rural high school district.

For clarity we will continue to refer herein to appellees as plaintiffs and to appellants as defendants.

The pertinent parts of plaintiffs' petition with which we are here concerned were that on November 30, 1954, an election was held in rural high school district No. 4, Bourbon county, whereby a $300,000 bond issue was authorized. At the time what is now part of common school district No. 92, Bourbon county, was included in district No. 4. On March 21, 1956, bonds No. 16 to No. 300, inclusive, totaling $285,000, which were a portion of the $300,000 authorized, were registered by district No. 4 with the state auditor.

Further allegations showed that on March 26, 1956, the electors

of common school district No. 99, Bourbon county, which was then a part of district No. 4, at a legal special election voted to annex all of the territory of that district to district No. 92. On April 25, 1956, the state superintendent of public instruction in accordance with law eliminated this territory from district No. 4 and placed it in district No. 92 for all purposes. The plaintiffs are the owners and taxpayers of this excluded territory.

It was alleged that none of the bonds authorized at the bond election or registered with the state auditor had been issued by defendants.

It was also alleged that any bonds which may be sold and issued by defendants shall be and become a lien and first mortgage only on the property which constitutes a part of district No. 4 at the time of the issuance of the bonds.

The defendants filed a general demurrer to this petition on the ground that the petition did not state facts sufficient to constitute a cause of action in favor of the plaintiffs and against defendants and they also filed a special demurrer on the ground that the plaintiffs had no legal capacity to sue.

These demurrers were overruled on June 15, 1956, by a memorandum opinion in which the trial court stated,

"The petition attempts to assert two causes of action, one to declare the Plaintiffs' property not liable for the lien of the bonds if and when they are issued. The other is to enjoin the sale of the bonds. . . ,"

and also stated,.

"This presents a clear-cut issue as to whether the bonds have been issued."

The memorandum opinion of the trial court further read:

"However, the Supreme Court of the State of Kansas seems to have laid down a definite rule to be followed in determining this fact. In *State vs. Pierce*, 52 Kan. 521, the decision recites:

" 'To issue county warrants or orders means "to send out, to deliver or to put into circulation." '

"Commenting upon the case the Supreme Court concludes:

" 'To issue county warrants or orders means "to send out; to deliver; to put forth; to put into circulation; to emit—as to issue bank notes, bonds, scrip," etc. A County warrant or order is "issued" when made out and placed in the hands of a person authorized to receive it, or is actually delivered or taken away. So long as a county warrant or order is not delivered or put into circulation, it is not "issued," within the terms of P. 1888.'

"*State vs. Pierce,*

"52 Kan. 521, 528-529.

"In *Steinbruck vs. Milford Township,* 100 Kan. 93, we find:

" 'As to when bonds are deemed to be issued, see *The State v. Pierce*, 52 Kan. 521, 35 Pac. 19; *Perkins County v. Graff*, 114 Fed. 441, 444, 4 Words & Phrases, p. 3778; 8 Words & Phrases, p. 7693; Webster's International Dictionary. Numerous other points are presented, but the one already considered is determinative and the others need not be discussed.' (p. 94.)

"In *Buckwalter vs. Henrion*, 118 Kan. 13, on page 15 the court quotes with approval from an authority as follows:

" 'It may be laid down that as a general rule the date of delivery of the bonds by the municipality to the creditor or purchaser is to be regarded as the date of issue.'

"As late as *State, ex rel., vs. Woodruff*, 164 Kan. 339, our Supreme Court has approved that measure of determining when bonds are issued, quoting as the law with reference to bonds, 'to deliver, or give out, as for use; as to issue provisions . . . To send out officially; . . . to put into circulation . . .,' and quoting as authority the cases heretofore cited.

"It is very evident, therefore, that the $285,000 worth of bonds are not 'issued' within the terms of the statute and the law of the State of Kansas. Therefore, they will not be a lien upon the Plaintiff's real estate if and when they are sold in the sum of $285,000 or any lesser sum. The Plaintiffs' Petition states a good cause of action on that ground.

"Referring to the second phase of the Petition, the Plaintiffs' land not being subject to the lien of the bonds, it is no concern of the Plaintiffs when and in what manner they are issued. Therefore, the Demurrer would be good as to this part of the Petition. However, as hereinbefore cited, if the Petition is good in any particular, the Demurrer must be overruled.

"The Demurrer of the Defendants is accordingly overruled."

A notice of appeal was served and thus the case comes before us for consideration.

We are first met with plaintiffs' motion to dismiss the appeal. We have examined the record with special attention to the contentions set out in the motion to dismiss, but we find no merit in the contentions and that motion is overruled.

Both parties to this appeal have raised much extraneous and redundant matter which will not be considered in this opinion.

There can be no quarrel with the authorities cited by the trial court in its memorandum opinion, quoted above, upon which it based its determination that the bonds had not been issued. These authorities need not be restated here (see, also, *State, ex rel., v. School Board*, 110 Kan. 779, 782, 204 Pac. 742) but we will consider further its final determination of the demurrers.

We can find no grounds, nor are there any proposed in the record, for the conclusion of the trial court that since the petition in effect sets out that if the bonds are issued the property of plaintiffs will not be liable for the lien of the bonds, it states a cause of action.

Let us assume, without granting, that the trial court's interpretation has merit. In *Lewis v. City of South Hutchinson,* 162 Kan. 104, 117, 174 P. 2d 51, this court said,

". . . the petition alleges nothing more than that the proposed bonds will become conclusively valid, negotiable obligations of the city unless the defendants are restrained from proceeding to register the bonds as authorized by law. Of course, the allegations to such effect state no reason which would justify the restraint of the defendants." (p. 117.)

The provisions of the statute (G. S. 1949, 10-119) are clear and unequivocal that whenever a part of the territory of any municipality has been detached and attached to some other municipality such territory shall be liable for the payment of all bonds issued before such detachment. (See, also, G. S. 1955 Supp. 24-131 and 72-834 in which reference is made to G. S. 1949, 10-119.) We can say nothing that will lend impetus to this plain legislative mandate. (For an applicable case see *Pessemier v. Plummer,* 135 Kan. 429, 432, 10 P. 2d 887.) In *State, ex rel., v. Lost Springs Rural High School District,* 176 Kan. 378, 384, 271 P. 2d 812, there was a similar situation. However, the detached territory in that case was not subject to being taxed by the district from which it was detached but was liable to be taxed by the district to which it was attached. On page 385 of that opinion this court stated, in substance, that such attachment—unless limited by statute and we note that no such statute exists here—is *for all purposes* even though the attached territory may be included in some type of high school district.

Under the allegations of the petition we are still confronted with the proposition that the bonds have not yet been issued and under the latter discussion the state is the only proper party to bring such an action. (*Haines v. Rural High School Dist. No. 3,* 171 Kan. 271, 232 P. 2d 437.) Thus we must hold that plaintiffs are not proper parties to maintain this action. To do otherwise would create endless confusion.

Since plaintiffs are not proper parties to maintain this action, which fact appears on the face of the petition, the special demurrer should have been sustained to the entitre petition and in view of the over-all result, the general demurrer should also have been sustained.

The order of the trial court is reversed with directions to sustain defendants' demurrers to plaintiffs' petition.

FATZER, J., not participating.